IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00820-CNS-NRN

PERRY W. SUGGS JR.,

Plaintiff,

v.

WARDEN LEPE,

Defendant.

---

**REPORT AND RECOMMENDATION ON**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (Dkt. #27)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before the Court pursuant to the order issued by Judge Charlotte N. Sweeney (Dkt. #28) referring Defendant Warden Lepe's Motion to Dismiss (Dkt. #27). Plaintiff Perry W. Suggs Jr. filed an opposition to the Motion to Dismiss (*see* Dkt. #30), and Defendant filed a reply (*see* Dkt. #31). The Court conducted a telephonic motion hearing on September 19, 2023. (*See* Dkt. #32.)

Defendant argues that Plaintiff's Complaint should be dismissed for lack of standing and failure to state a claim. In response, Plaintiff argues that the Complaint is well-pleaded and should not be dismissed. The Court has taken judicial notice of the Court's file, considered the applicable federal and state statutes and case law. As set forth below, the Court **RECOMMENDS** that the Motion to Dismiss (Dkt. #27) be **GRANTED**.

# I. BACKGROUND[1]

## A. Bureau of Prisons ("BOP") Policy Regarding the Trust Fund Limited Inmate Computer System ("TRULINCS") and Inmate Visitation

During all relevant times, Plaintiff has been an inmate at the medium-security Federal Correctional Institution in Florence, Colorado ("FCI"). (Dkt. #1 at 5.) Plaintiff's allegations relate to his ability to contact individuals outside the prison via TRULINCS and in-person visitation. TRULINCS is a non-internet system that allows inmates to make phone calls, send and receive emails, generate mailing labels, and manage trust funds, among other functions. (*See generally* Dkt. #27-1 (BOP Program Statement 4500.12).)[2]

BOP policy states that "[i]nmates may only communicate with approved persons on their contact lists for the purpose of postal mail, TRUFONE, [and] Public Messaging." (*Id.* at 134.) At FCI, inmates may have up to 100 contacts on their contact list, 30 of which can have an associated email address, and 30 of which may have an associated phone number. (Dkt. #27-2 at 11.)

To make a phone call, an inmate must first "request that the telephone numbers be added to their TRUFONE lists by creating a contact with a telephone number." (Dkt. #27-2 at 135; Dkt. #1 at 5–6.) Then, BOP policy states that the request should be "processed to TRUFONE within approximately 15 minutes." (*Id.*)

---

[1] Unless otherwise noted, all allegations are taken from Plaintiff's Complaint (Dkt. #1) and are presumed to be true for the purposes of this motion to dismiss. Any citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

[2] The Court takes judicial notice of the BOP policies cited in the Complaint. *See United States v. Tidzump*, 841 F.3d 844, 845 n.1 (10th Cir. 2016).

To send or receive an email, BOP policy prescribes a notice and consent policy. First, an inmate adds an email to their contact list; second, a system-generated message is sent to the email recipient notifying him or her that an inmate is attempting to add the recipient to their contact list; third, the email recipient approves or refuses; and fourth, if the email recipient approves, "the individual is then added to the inmate's electronic message contact list." (Dkt. #27-2 at 10.)

To send postal mail, inmates must apply a "TRULINCS-generated mailing label on all outgoing postal mail." (Dkt. #27-2 at 10.) However, certain inmates are exempt from this requirement: "those who have an extraordinary circumstance that prevent them from using the TRULINCS workstation, pose special security concerns, or are housed in the Special Housing Unit." (*Id.*) BOP policy does not appear to prescribe a specific approval process for adding postal mail contacts.

Regarding in-person visitation, BOP policy states that an inmate submits a list of proposed visitors during admission-orientation, and "[a]fter appropriate investigation, staff shall compile a visiting list for each inmate." (Dkt. #27-4 at 14.) For proposed visitors who are not an inmate's immediate family, BOP staff may request background information before adding these people to the list. (*Id.* at 15.) If a proposed visitor is deleted from or added to the list, "staff update the list as soon as possible to reflect the change." (*Id.*)

Regarding access limitations to TRULINCS, BOP policy states that "[t]he Warden shall prohibit or discontinue the operation of TRULINCS, or individual inmates' participation, whenever it is determined to jeopardize the safety, security, or orderly

operation of the correctional facility, or the protection of the public and staff." (Dkt. #27-1 at 127.)

**B. Plaintiff's Allegations**

Plaintiff filed suit on March 31, 2023, alleging that Defendant violated his rights under the First, Fifth, and Fourteenth Amendments of the United States Constitution by temporarily blocking his and other inmates' ability to communicate via in-person visits, phone calls, emails, and postal mail.

Plaintiff makes the following specific allegations. On November 2, 2022, Defendant Lepe, FCI Warden, sent an inmate bulletin stating that effective December 3, 2022, "all outgoing correspondence must contain a TRULINCS-generated mailing label." (Dkt. #1-2 at 1.) On February 23, 2023, FCI was placed on lockdown. (Dkt. #1 at 5.) On March 2, 2023, Defendant notified inmates that FCI had been placed on lockdown because of increases in the use of narcotics, increased assaults, and increases in the Special Housing Unit population. (Dkt. #1-1 at 1.)[3] The notification further stated that due to "the increase in circumvention of the communication systems (i.e. telephone and trulincs system) to further facilitate illegal activity and illegal money transactions between the inmate population," the "[c]ontacts from every inmate will be deleted," "[e]ach inmate will resubmit a request for contacts to be reinstated," and the Special Investigative Service ("SIS") "will be the only approving authority for every contact." (*Id.*) Plaintiff also learned, after the lockdown was partially lifted on March 23, 2023, that all the visitors on each inmate's visiting list had been deleted. (Dkt. #1 at 5.)

[3] The Court considers the November 2, 2022 inmate bulletin (Dkt. #1-2) and March 2, 2023 inmate notification (Dkt. #1-1) to be incorporated into the Complaint by reference. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

In short, Plaintiff alleges that Defendant's actions unlawfully blocked inmates' ability to communicate with the outside world via phone, email, postal mail, and in-person visits.

Plaintiff argues that inmates are entitled to these communication channels under certain BOP Program Statements on inmate telephone regulations (Dkt. #27-5 (5264.08)), correspondence (Dkt. #27-3 (5265.14)), visiting regulations (Dkt. #27-4 (5267.09)), and the TRULINCS system (Dkt. #27-1 (4500.12)). (Dkt. #1 at 6.) Plaintiff argues that because these policies explain the procedures for when these services may be denied, and because none of these policies provide Defendant with "unfettered discretion" to determine when the services will be denied, "a property and/or a liberty interest is created" and Plaintiff has "an expectancy that these services will not be arbitrarily terminated." (*Id.* at 6–7.) Plaintiff alleges that denial of these services affects inmates' "ability to maintain community and family ties that contribute to personal development." (*Id.* at 7.) Plaintiff argues that he was provided no reasonable notice and no hearing before denial occurred. (*Id.*) Plaintiff also alleges that due process and BOP policies require that Defendant make "individualized determinations" regarding each inmate before deleting their contacts. (*Id.*)

Plaintiff also alleges that he was unable to pursue administrative remedies to fix the issue because prison staff refused to provide Plaintiff with a Bp-8 informal resolution form. In particular, Plaintiff alleges that on March 6, 2023, Plaintiff explained the issue and asked counselor Romain for a Bp-8 informal resolution form but was told that "there was no need to file the Bp-8" because Plaintiff could simply re-add his contacts to TRULINCS and await SIS approval. (*Id.* at 8.) Plaintiff also attempted to obtain a Bp-8 form from his case manager, Ms. Shields, and unit manager, Mrs. Adams, who did not

provide the form and re-directed Plaintiff to counselor Romain. (*Id.*) Counselor Romain again did not provide the form. (*Id.*)[4]

Plaintiff seeks prospective relief based upon these claims. He requests that prison authorities give "reasonable notice of adverse action and some form of individualized hearings and determinations before arbitrarily deleting contacts of every inmate or any inmate." (Dkt. #1 at 10.)

## II. STANDARD FOR DISMISSAL

### A. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013). A motion to dismiss under Rule 12(b)(1) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015). Accordingly, Plaintiff bears the burden in this case of establishing that this Court has jurisdiction to hear his claims.

[4] Defendant does not argue that Plaintiff failed to exhaust his administrative remedies, accordingly, the Court will accept, for purposes of this decision, Plaintiff's argument that he has exhausted his administrative remedies to the extent possible.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id*. at 1002–03 (citations omitted); *see also Pueblo of Jemez*, 790 F.3d at 1148 n.4.

**B. Federal Rule of Civil Procedure 12(b)(6)**

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679. To obtain dismissal at the Rule 12(b)(6) stage based on the statute of limitations, the allegations on the face of the complaint surrounding the date of accrual must "make clear that the right sued upon has been extinguished." *Sierra Club*, 816 F.3d at 671 (quotation marks omitted).

**C. Pro Se Plaintiff**

Plaintiff proceeds pro se. Accordingly, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (the court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for

the plaintiff in the absence of any discussion of those issues”). A plaintiff’s pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## III. ANALYSIS

Defendant first argues that the Complaint must be dismissed because, pursuant to Rule 12(b)(1), the Court lacks subject matter jurisdiction over Plaintiff’s claims for prospective relief. Defendant next argues that the Complaint should be dismissed pursuant to Rule 12(b)(6) because Plaintiff fails to adequately allege that Defendant’s actions were not reasonably related to a legitimate penological interest.

### A. Lack of Standing Pursuant to Fed. R. Civ. P. 12(b)(1)

Standing under Article III of the Constitution requires a “case” or “controversy.” U.S. Const. art. III, § 2, cl. 1. The existence of a live case or controversy must exist at all stages of litigation. *See Front Range Equine Rescue v. Vilsack*, 782 F.3d 565, 568 (10th Cir. 2015); *see also Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (holding that a court’s judgments must resolve “a real and substantial controversy . . . as distinguished from an opinion advising what the law would be upon a hypothetical state of facts” (citation omitted)). To establish Article III standing, the plaintiff bears the burden of demonstrating an injury in fact, among other elements. *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011) (citing *Friends of the Earth, Inc. v. Laidlaw Env’t. Servs., Inc.*, 528 U.S. 167, 180–81 (2000)).

As explained above, Plaintiff here requests only prospective relief. “Although a plaintiff may present evidence of a past injury to establish standing for retrospective relief, he must demonstrate a continuing injury to establish standing for prospective

relief." *Id.* (citing *PETA v. Rasmussen*, 298 F.3d 1198, 1202 (10th Cir. 2002)); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."); *Facio v. Jones*, 929 F.2d 541, 544 (10th Cir. 1991) ("[W]hile a plaintiff who has been constitutionally injured can bring a § 1983 action to recover damages, that same plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured in the future.").

Here, Defendant argues that Plaintiff lacks standing because he seeks only prospective relief, while only describing allegedly unlawful acts that occurred in the past. (Dkt. #27 at 6–7.) The Court agrees.

Plaintiff has alleged that, in one past instance, Defendant decided to delete all inmates' TRULINCS contacts and imposed temporary restrictions on inmate communications. Plaintiff does not allege that he was unable to re-add TRULINCS contacts after they were deleted. While "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury," *O'Shea*, 414 U.S. at 496, "they do not confer standing to pursue prospective relief without some credible threat of future injury." *Mink v. Suthers*, 482 F.3d 1244, 1253 (10th Cir. 2007) (citation omitted). Here, the prospect of future injury rests on the likelihood that Defendant might again delete all TRULINCS contacts and subject Plaintiff to increased communication restrictions. Plaintiff has not made any allegations regarding the likelihood of any such future injury. Accordingly, Plaintiff fails to demonstrate a continuing injury as necessary to establish standing for prospective relief.

**B. Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)**

Even if Plaintiff did have standing to pursue his claims, the Court recommends that they be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

While the elements of First, Fifth, and Fourteenth Amendment claims can vary, when considering at the motion to dismiss stage whether a prison regulation impinges on an inmate's constitutional rights, "a court need only assess, as a general matter, whether a prison regulation is 'reasonably related to a legitimate penological interest.'" *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir.2010)). The Complaint alleges that Defendant placed the institution on lockdown because of increases in the use of narcotics, assaults, and the Special Housing Unit population at FCI. Defendant further explained that because the telephone and TRULINCS systems were being used to facilitate illegal activity and illegal money transfers, all TRULINCS contacts would be cleared and inmates would need to resubmit contacts for approval. Plaintiff has failed to allege that these policies were not reasonably related to a legitimate penological interest. *See Al-Owhali*, 687 F.3d at 1241 (affirming dismissal where plaintiff failed to "plead some plausible facts supporting his claim that the [communication restrictions] did not serve" the purported purpose of the restriction).

Additionally, Plaintiff has not adequately alleged that he has a constitutional right to use TRULINCS at all. While "[a] refusal to process *any* mail from a prisoner impermissibly interferes with the addressee's First and Fourteenth Amendment rights" *Treff v. Galetka*, 74 F.3d 191, 195 (10th Cir. 1996) (emphasis added), Plaintiff does not

allege that Defendant prevented Plaintiff from sending any mail. The Court also notes that "multiple courts have held that the benefits made available to prisoners under the TRULINCS system, including the use of e-mail correspondence, are merely . . . institutional privileges, not constitutionally protected rights, which can be limited at the discretion of the warden." *Larson v. Mejia*, No. 3:15-cv-1012-N, 2015 WL 9243812, at *5 (N.D. Tex. Nov. 9, 2015), *report and recommendation adopted*, No. 3:15-cv-1012-N, 2015 WL 9244284 (N.D. Tex. Dec. 17, 2015) (internal quotations omitted) (collecting cases).

"A person alleging that he 'has been deprived of his right to procedural due process' must prove two elements: that he possessed a constitutionally protected liberty or property 'interest such that the due process protections were applicable,' and that he was not 'afforded an appropriate level of process.'" *Zwygart v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Kan.*, 483 F.3d 1086, 1093 (10th Cir. 2007) (citation omitted). Accordingly, because Plaintiff does not allege a constitutional right to use TRULINCS, or to have an individualized determination when a TRULINCS contact list is deleted, he cannot state a procedural due process claim under the Fifth Amendment.

Lastly, Plaintiff has not stated a claim under the Fourteenth Amendment, which requires some allegation of state action. *Hall v. Witteman*, 584 F.3d 859, 866 (10th Cir. 2009). Plaintiff's allegations solely concern a federal prison.

Accordingly, the Court finds that the Complaint has failed to state a claim.

## IV. CONCLUSION

For the reasons set forth above, it is hereby **RECOMMENDED** that the Motion to Dismiss (Dkt. #27) be **GRANTED**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148–53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412–13 (10th Cir. 1996).**

Dated at Denver, Colorado this 8th day of February, 2024

N. Reid Neureiter
United States Magistrate Judge